UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE: TRASYLOL PRODUCTS
LIABILITY LITIGATION - MDL-1928

This Document Relates To:
LEWANDOWSKI ET AL. V. BAYER
HEALTHCARE A.G. ET AL.,
Case No. 08-80750

_____/

## ORDER GRANTING BAYER'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendants' (hereinafter, collectively,

"Bayer") Motion for Summary Judgment ("Motion") (DE 6081), filed on June 4, 2010.  Plaintiffs

filed a Response (DE 6332), to which Bayer replied (DE 6467).  The Court has reviewed the

pertinent parts of the record and is advised of the premises.  For the reasons stated below,

Bayer's Motion shall be granted as to all Counts.

I.      **Factual Background**

The following facts are undisputed and material for purposes of summary judgment.

Plaintiffs Katherine and John Lewandowski[1] filed this suit against Bayer[2] (hereinafter,

_____

[1] Plaintiffs are, and were when they filed this lawsuit, citizens of the state of Virginia.
(DE 6082 at ¶ 2).

[2] Defendant Bayer Corporation is an Indiana corporation with its principal place of
business in Pennsylvania.  Defendant Bayer HealthCare Pharmaceuticals Inc. is a Delaware
corporation with its principal place of business in New Jersey.  At the time this Complaint was

collectively, the "Parties") on July 11, 2008.

Mrs. Lewandowski received Trasylol[3] during coronary artery bypass graft ("CABG") surgery. The surgery was performed at Winchester Medical Center in Virginia on February 3, 2006. Within a few days of the CABG procedure, Mrs. Lewandowski's creatinine levels started rising and she was diagnosed with acute renal failure.

In the weeks after Mrs. Lewandowski's surgery in 2006, Plaintiffs consulted with Dr. Stam and other doctors as to the cause of Mrs. Lewandowski's alleged injuries. Mrs. Lewandowski testified that at the time of her surgery, she did not know that she was given Trasylol. (Deposition of Katherine Lewandowski ("K. Lewandowski Dep.") at 174:18-20). She further testified that she was aware that her husband had been told by one of her physicians while she was still in the hospital that she had received Trasylol, (K. Lewandowski Dep. at 131), and that, at her first post-surgery follow-up appointment, her cardiac surgeon, Dr. Denton Stam, informed her that she had received Trasylol, and that Trasylol may have caused her alleged injuries (K. Lewandowski Dep. at 15-16; 131-32; 145). Mrs. Lewandowski testified that statements to the contrary in her Plaintiff Fact Sheet ("PFS") were erroneous.[4] Her medical

_____

filed, Defendant Bayer HealthCare AG, the predecessor in interest of Bayer Schering Pharma AG, was a German corporation with its principal place of business in Germany. Defendant Bayer Schering Pharma AG, which was substituted as a defendant in this case for Bayer HealthCare AG, is a German corporation with its principal place of business in Germany. (DE 6082 at ¶¶ 3-5).

[3] Bayer manufactured Trasylol, the brand name of a drug known generically as "aprotinin for injection," which was utilized to control perioperative bleeding. Trasylol was available for medical use only by prescription. (Master Compl. at ¶ 11.)

[4] The statements in the PFS that Mrs. Lewandowski identified as erroneous were (1) that she first learned that she was administered Trasylol in April 2008, and (2) that she had never been informed by a healthcare provider that her injuries were due to Trasylol. (K. Lewandowski

2

records indicate that her first-follow-up appointment with Dr. Stam took place on April 18, 2006. (Def. Ex. G at 2-3). Although Dr. Stam told Mrs. Lewandowski about Trasylol in 2006, she "decided to do something about it" in April 2008. (K. Lewandowski Dep. at 19).

Mrs. Lewandowski submitted an errata sheet of corrections to ten pages of her testimony.[5] She stated in her corrections that she was confused, and that her doctors did not mention that she was given Trasylol, nor did they mention that Trasylol may have caused her renal failure. She did not learn that she received Trasylol or of its possible connection with her alleged renal failure until 2008. (Pl. Ex. A at 7-9).

Mr. Lewandowski testified that while Mrs. Lewandowski was in the hospital, one of her treating physicians told Mr. Lewandowski that his wife was administered Trasylol during her February 3, 2006, surgery and that Trasylol may have caused his wife's alleged injuries. (Deposition of John Lewandowski ("J. Lewandowski Dep.") at 15-16; 95-96).

Mr. Lewandowski also submitted an errata sheet of corrections to nine pages of his testimony. He stated in his corrections that he was confused, and that he did not discuss Trasylol with Mrs. Lewandowski. He stated that he does not recall hearing the word "Trasylol" until 2008, when he saw a TV commercial. (Pl. Ex. B at 5-9).

Dr. Stam testified that he did not recall having had any discussion with the Lewandowskis between February of 2006 and April of 2006 where they mentioned "Trasylol," and the only place he may have mentioned it was in the "preoperative talk about bleeding." (Stam Dep. at

Dep. at 18-19; 34-35).

[5] The corrected pages were dispersed throughout her deposition testimony, including pages 10, 15, 16, 18, 19, 34, 35, 130, 131, 132. (Pl. Ex. A at 7-9).

3

220:16-25).  He further testified that the other doctors involved did not suggest to him that

Trasylol could have been the cause of Mrs. Lewandowski's alleged injuries.  (Stam. Dep. at 214-

215).  When asked if he had any specific memories about his last visit with Ms. Lewandowski on

April 18, 2006, Dr. Stam acknowledged that he did not recall whether Mrs. Lewandowski asked

about the cause of her renal failure, and did not have any specific information one way or the

other as to whether she did.  He stated that it would be unusual if she had asked.  (Stam Dep. at

262-263).

Mrs. Lewandowski underwent dialysis beginning on March 10, 2006.  (DE 6082 at ¶ 11).

She was discharged from the hospital on April 3, 2006.  (DE 6082 at ¶ 15).

Plaintiffs filed this suit directly in this Court on July 18, 2008, alleging that they suffered

injuries as a result of Mrs. Lewandowski's exposure to Trasylol during a coronary artery bypass

graft ("CABG") surgery on February 3, 2006.  Plaintiffs' Short Form Complaint consists of

twelve counts: Strict Liability - Failure to Warn (Count I); Strict Liability - Design Defect (Count

II); Negligence (Count III); Negligence Per Se (Count IV); Fraud, Misrepresentation and

Suppression (Count V); Constructive Fraud (Count VI); Breach of Implied Warranties (Count

VII); Unfair and Deceptive Trade Practices (Count VIII); Unjust Enrichment (Count IX); Loss of

Consortium (Count X); Gross Negligence/Malice (Count XIII); and Punitive Damages (Count

XIV).[6]  Bayer's Motion seeks summary judgment on all twelve counts.

---

[6] Plaintiffs adopted the pleading of these causes of action as set forth in the Master
Complaint.  (Short Form Complaint at ¶ 5).  Plaintiffs did not adopt Counts XI and XII of the
Master Complaint, and therefore their complaint, and thus this Order, omits these counts.

4

## II.     Legal Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."[7] FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the trial court "must consider all the evidence in the light most favorable to the non-moving party," and "resolve all reasonable doubts in favor of the non-moving party." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (internal citations omitted).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citing FED. R. CIV. P. 56(c)).  The moving party can meet this burden by presenting evidence showing that there is no dispute of material fact, or by pointing out to the district court that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id.* at 322-23, 325.

Once the moving party has met its burden, the non-moving party bears the burden of coming forward with evidence of each essential element of its claim, such that a reasonable jury could find in its favor. *See Earley*, 907 F.2d at 1080 (11th Cir. 1990).  Rule 56(e) "requires the

---

[7] According to the Supreme Court, "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Furthermore, "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. 324. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."[8] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Celotex*, 477 U.S. at 322-23.

### III.   Discussion

#### A.   Choice of Law

The Parties dispute whether Virginia or Pennsylvania law applies to this case. Florida choice of law rules apply. *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903-04 (E.D. La. 2007) (applying the choice of law rules of the state where the MDL court sits to cases directly filed in the MDL); (DE 6081 at 6 n.7; DE 6332 at 8).

The Parties and this Court agree that the law of the state with the most "significant relationship" to the claim should govern. (DE 6081 at 6 n.7; DE 6332 at 8). Florida's borrowing statute "bars actions brought in Florida which arise outside the State of Florida and which are time-barred in the jurisdiction in which the cause of action arose." *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1113 (Fla. 1987) (citing § 95.10, Fla. Stat.). A cause of action arises in the state having

---

[8] According to the *Anderson* court, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

the "most significant relationship" to the claim. *Bates*, 509 So. 2d at 1115; *Steele v. S. Truck Body Corp.*, 397 So. 2d 1209, 1210-12 (Fla. 2d DCA 1981) (applying West Virginia law where the injury occurred in, and plaintiff was a resident of, West Virginia, even though defendant manufacturer was a Florida corporation and van was "negligently and defectively designed, manufactured, and sold into the stream of national commerce in Florida"). The significant relationship test also determines the substantive state law that applies to this case. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (citing Restatement (Second) of Conflict of Laws §§ 145-46).

The following factors are to be considered in applying this test: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" *Bishop*, 389 So. 2d at 1001 (internal citations omitted).

Bayer argues that Virginia law applies, given that Plaintiffs are Virginia residents, the surgery took place in Virginia, Mrs. Lewandowski was administered Trasylol in Virginia, and her claimed injuries occurred in Virginia. (DE 6081 at 6-7 n.7).

Plaintiffs acknowledge that Mrs. Lewandowski's injury occurred in Virginia, but respond that Pennsylvania law should apply. The injury causing conduct – promoting, marketing, distributing, testing, and selling Trasylol – occurred in Pennsylvania, and Bayer Corporation has its principal place of business in Pennsylvania. (DE 6332 at 9-10). Plaintiffs also contend that the relationship between the parties is centered in Pennsylvania (DE 6332 at 10 (citing *In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988)) and that policy favors the application of

7

Pennsylvania law (DE 6332 at 10-12).

Bayer replies that under Florida choice of law rules, the most important contact is with the state where the injury occurred – in this case, Virginia. (DE 6467 at 2). Furthermore, the admission by a single Defendant, Bayer Corporation, that it was promoting, marketing, distributing, testing, and selling Trasylol in interstate commerce, and that its principal place of business was in Pennsylvania, is insufficient support for a finding that the relevant conduct occurred in Pennsylvania. Other Defendants are incorporated and have their principal place of business outside of Pennsylvania, and Bayer has admitted to relevant conduct by these entities. (DE 6467 at 2-4). Bayer further argues that the conduct occurred and the parties' relationship was centered in Virginia, the *Bendectin* decision should not persuade this Court, and policy favors application of Virginia law. (DE 6467 at 3-5 (citing *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458 (E.D. La. 2006))).

The Court concludes that Virginia law governs this case. It is undisputed that the injury occurred in Virginia, and this factor usually will be decisive. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (The state where the injury occurred is "under most circumstances . . . the decisive consideration in determining the applicable choice of law."); *Steele v. S. Truck Body Corp.*, 397 So. 2d 1209, 1211-12 (Fla. 2d DCA 1981).

Furthermore, I find that the relevant conduct occurred in, and the Parties' relationship was centered in, Virginia, where the surgery took place, Trasylol was administered and allegedly caused harm, and where Trasylol most likely was marketed, shipped, and sold. *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458 (E.D. La. 2006) (Merck's conduct "originated in New Jersey, but it was effectuated and felt by every plaintiff in their own home jurisdiction," and

8

Merck's relationship was centered in plaintiffs' home states, where Vioxx most likely was marketed, shipped, prescribed, ingested, and allegedly caused harm); *In re Panacryl Sutures Prods. Liab. Litig.*, 263 F.R.D. 312, 321 (E.D.N.C. 2009) (applying law of plaintiffs' home states because sutures most likely were used "during surgeries that occurred in their home states and any adverse reaction most likely occurred in their home states"). Plaintiffs' assertions to the contrary are insufficient.[9] Virginia law governs the claims in this case.

**B.    Virginia's Statute of Limitations for Personal Injury Claims (Counts I through IV, VII, IX, XIII)**

Bayer argues that Virginia law requires Plaintiffs to bring personal injury claims within two years after the cause of action accrues. (DE 6081 at 7 (citing Va. Code § 8.01-243(A))). These claims include Plaintiffs' claims of strict product liability, negligence, negligence per se, breach of implied warranty, unjust enrichment, and gross negligence/malice. (DE 6081 at 7).

Plaintiffs do not dispute that, if the Court finds that Virginia law governs, Va. Code § 8.01-243(A) applies and the limitations period for these claims is two years. (DE 6332 at 22).

The Parties differ, however, as to when the claims accrued and the limitations period began running.

Bayer argues that, under Virginia law, the claims accrued and the statutory period began running on the date of injury. Virginia does not recognize a discovery rule for personal injury

---

[9] The *Bendectin* decision does not persuade me to the contrary. It has been questioned by subsequent authority, *see, e.g., In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 291 n.13 (S.D. Ohio 1997) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)), and in any event involved circumstances where plaintiffs did not necessarily reside in the state in which the drug may have been prescribed, dispensed, or ingested. *In re Bendectin Litig.*, 857 F.2d 290, 305 (6th Cir. 1988). Here, it is undisputed that Plaintiffs are Virginia residents, the surgery took place in Virginia, Mrs. Lewandowski was administered Trasylol in Virginia, and her claimed injuries occurred in Virginia.

cases, and there is no applicable tolling doctrine. It is undisputed that Mrs. Lewandowski experienced renal dysfunction and was diagnosed with acute renal failure on February 5, 2006, and Plaintiffs had two years from that date to file their suit. Their July 11, 2008 filing therefore was untimely. (DE 6081 at 7-9).

Plaintiffs acknowledge that Virginia does not have a general discovery rule, but respond that Virginia applies equitable tolling. (DE 6332 at 13 (citing *Supermarket of Marlinton Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)). Plaintiffs argue that Bayer fraudulently concealed the facts of Trasylol's relationship to Plaintiffs' injuries. For example, Bayer falsely represented to Dr. Stam that the author of an adverse study, Dr. Mangano, was a disgruntled former Bayer employee who had manipulated his study results "to make Bayer look bad because he had an axe to grind." (DE 6332 at 13-21).

The Court finds that Plaintiffs' personal injury claims are time-barred under Virginia's statute of limitations. The Parties do not dispute that Plaintiffs' claims are subject to the two-year statute of limitations period for personal injury claims set forth in Va. Code § 8.01-243(A). Section 8.01-243(A) provides that "every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues"); *see also Large v. Bucyrus-Erie Co.*, 707 F.2d 94, 96-99 (4th Cir. 1983) (applying statute to products liability claims) (citing *Locke v. Johns-Manville Corp.*, 275 S.E.2d 900 (Va. 1981)); *Friedman v. Peoples Serv. Drug Stores, Inc.*, 160 S.E.2d 563 (Va. 1968) (personal injury claims based on a breach of warranty or contract).

A right of action is "deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person." Va. Code § 8.01-

230; *see also Wade v. Danek Med., Inc.*, 182 F.3d 281, 285 (4th Cir. 1999) ("It is well settled in Virginia, however, that the limitations period begins running at the time of the initial injury, not at the time of diagnosis or discovery."); *Locke*, 275 S.E.2d at 904.

Virginia generally does not recognize a discovery rule in applying the statute of limitations in personal injury cases. Va. Code § 8.01-230; *see also Large*, 707 F.2d at 96-99; *Smith v. Danek Med., Inc.*, 47 F. Supp. 2d 698, 701 (W.D. Va. 1998) (cause of action accrued when medical device implanted, not when device was discovered to be causing injury and surgically removed); *Locke*, 275 S.E.2d at 905 (declining to adopt a "discovery rule, which triggers the running of the statute only when the injury is discovered or should have been discovered in the exercise of reasonable diligence," and instead holding that "the accrual point is when damage occurs"). Defendants need only show when the injury occurred "with a reasonable degree of medical certainty." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 285 (4th Cir. 1999) ("In view of Wade's own admissions regarding the time at which her symptoms arose and the time at which she communicated them to her doctors . . . we agree with the district court that appellants amply met their burden of demonstrating when Wade's injury occurred 'with a reasonable degree of medical certainty.'") (citing *Locke*, 275 S.E.2d at 905).

It is undisputed that Mrs. Lewandowski's alleged injury occurred by February 5, 2006, the date the record shows that she experienced renal dysfunction and was diagnosed with acute renal failure. The Court finds that Plaintiffs' personal injury claims accrued and the statute of limitations period began running as of that date.

Furthermore, the Court does not agree with Plaintiffs that equitable tolling saves their claims. Virginia lacks a general discovery rule for personal injury claims, which is subject to

11

certain specifically-enumerated exceptions. *See* Va. Code § 8.01-230. Bayer argues that none of these apply here. Plaintiffs do not dispute this point, and instead argue that Plaintiffs' claims are timely under equitable tolling. In support, Plaintiffs cite inapplicable federal law.[10]

The Court finds that the two-year statute of limitations for Plaintiffs' personal injury claims expired in February of 2008. Plaintiffs did not file this suit until July 11, 2008. Plaintiffs' claims are time-barred.

## C.   Fraud (Counts V and VI) and Unfair and Deceptive Trade Practices (Count VIII)

Bayer argues for summary judgment as to Plaintiffs' claims of fraud and unfair and deceptive trade practices. The Constructive Fraud claim (Count VI) was dismissed pursuant to this Court's orders dated March 5, 2009 (DE 809 (dismissing Count VI (Constructive Fraud) of the Master Complaint for failure to allege the fiduciary relationship required to prove constructive fraud) and April 1, 2009 (DE 916 (dismissing Count VI unless Plaintiffs filed a response to the Order or otherwise amended the Complaint). Plaintiffs did not respond to either of these orders and did not attempt to amend their Complaint. (DE 6081 at 3 n.6).

Plaintiffs do not respond to this argument. Due to this Court's previous orders regarding dismissal of the constructive fraud claim, it is appropriate for this Court to consider Count VI dismissed, thereby precluding consideration of the claims at summary judgment.

Bayer further argues that the Fraud claim (Count V) and Unfair Trade Practices claim (Count VIII) are untimely because this claim in substance is a personal injury claim and therefore

---

[10] Plaintiffs rely on a Fourth Circuit case dealing with the standard for equitable tolling under the federal Clayton Act. (DE 6332 at 13). Bayer argues that the decision is inapposite to Plaintiffs' personal injury action governed by Virginia law, and this Court agrees.

is subject to the same statute of limitations.  Furthermore, even if a discovery rule applied, Plaintiffs' own testimony establishes that they were on notice of the fraud and that, even with the benefit of the discovery rule, this claim was untimely.  (DE 6081 at 9-12).

Plaintiffs respond that a discovery rule does apply to these claims, and that they were not on notice of and could not have discovered their claims until 2008.  According to Plaintiffs, this Court should not consider Mrs. Lewandowski's testimony that she learned by April 2006 that she received Trasylol during her surgery, that Trasylol may be a cause of her renal dysfunction and failure, and that she was informed of these facts by a healthcare professional.  This testimony was "supplanted" by her errata sheet, and her corrected testimony is consistent with testimony by Dr. Stam.  (DE 6333 at 1-3; DE 6332 at 20-21).

Plaintiffs further respond that Bayer engaged in fraudulent concealment of the fact that Trasylol was related to renal failure, the fact that for the first time put her on notice as to her potential cause of action.  The concealment that Plaintiffs allege is, in summary, that although Bayer was aware of several studies indicating that Trasylol presented serious risks to patients, it engaged in behavior designed to suppress that information from public dissemination.  (DE 6332 at 13-21).

Bayer replies that fraudulent concealment is not available to Plaintiffs because Plaintiffs do not allege that Bayer prevented Plaintiffs from learning of Mrs. Lewandowski's injuries, Plaintiffs have testified that they knew of their cause of action by April 2006, and Plaintiffs' claims of fraudulent concealment are factually unsupported.  (DE 6467 at 9-10).

The Court finds that Plaintiffs' Fraud and Unfair Trade Practices claims are untimely under Virginia law.  There is no dispute that the statute of limitations period for these claims is two years.  Va. Code § 8.01-243; (DE 6332 at 22).  Under Virginia law, these claims accrue

13

when the fraud "is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01-249.

This Court is not persuaded that the errata sheets should be considered. Although the Parties and this Court have not identified an Eleventh Circuit case squarely addressing the issue, *see, e.g., Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530, 532 (S.D. Fla. 2009) (noting that "the Eleventh Circuit has not directly addressed the issue of whether substantive changes can readily be made to deposition testimony"), federal district courts in the Eleventh Circuit have exercised their discretion to disregard errata sheets proposing changes to deposition testimony. *See, e.g., Reynolds v. IBM Corp.*, 320 F. Supp. 2d 1290, 1300-01 (M.D. Fla. 2004) (disregarding errata sheet and granting summary judgment despite plaintiff "confusion" about a telephone call's date), *aff'd*, 125 Fed. Appx. 982 (11th Cir. 2004); *but see Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530, 532 (S.D. Fla. 2009) (denying motion to strike portion of errata sheet based on permissible substantive changes to deposition testimony under Rule 30(e)).

The Court finds persuasive the approach adopted by certain district courts in this Circuit, as well as in a series of recent opinions in other circuits. Under this approach, Courts may disregard errata sheets submitted under Federal Rule of Civil Procedure 30(e) where the corrected testimony contradicts the original testimony, and Plaintiffs fail to provide a sufficient justification for the change. *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268, 270-71 (3d Cir. 2010) (holding that "when reviewing a motion for summary judgment, a district court does not abuse its discretion under Rule 30(e) when it refuses to consider proposed substantive changes that materially contradict prior deposition testimony, if the party proffering the changes fails to provide sufficient justification," and finding no abuse of discretion in refusing to consider contradictory errata sheet); *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217,

14

1225 (9th Cir. 2005) ("While the language of [Rule] 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment.") (internal citations omitted); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir.2002) (finding summary judgment inappropriate and rejecting attempt to eliminate genuine issues of material fact through changes in a deposition transcript, stating "[w]e do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony"); *Thorn v. Sundstrand Aerospace Corp.*, 207 F. 3d 383, 389 (7th Cir. 2000) ("[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not'.").

Here, Plaintiffs' errata sheets do not reflect errors in transcription: the changes directly contradict the substance of Plaintiffs' initial testimony. Mrs. Lewandowsky's original testimony established that she had at least constructive notice of her claims by April 2006. She repeatedly stated that a physician informed her that she received Trasylol and that Trasylol may have caused her injuries. Mr. Lewandowski corroborated this with testimony that he learned while his wife was still in the hospital that Trasylol was given and may have contributed to Mrs. Lewandowski's alleged injuries.

Contrary to their initial testimony, Plaintiffs state in their errata sheets that they did not learn by April 2006 that Mrs. Lewandowski received Trasylol, nor did they learn from one of her physicians by that time that Trasylol could have caused her renal failure. Plaintiffs attempt to justify their corrections by stating that they were confused, but the Court does not discern noticeable confusion in their original testimony, which was extensive and consistent.

15

Furthermore, it is undisputed that Mrs. Lewandowski was given Trasylol on February 3, 2006, and that she was diagnosed with acute renal failure within days of her surgery. That Dr. Stam does not recall having discussed or been alerted to Trasylol as a possible cause for Mrs. Lewandowsky's renal failure does not create an issue of fact as to whether Mrs. Lewandowsky was on notice that Trasylol may have caused her alleged injuries. Plaintiffs' contradictory corrections cannot establish a genuine issue of material fact where the original testimony did not create one.

Plaintiffs also fail to support their conclusory allegations of fraudulent concealment. For example, Plaintiffs state that Dr. Stam was misled as to the truth of the Mangano study indicating that Trasylol was associated with adverse renal events, but Dr. Stam only could testify that he was given a false "impression" and could not recall from whom or where he acquired that impression, nor could he identify any misleading statements made to him by Bayer. (Stam Dep. at 188-89). Furthermore, Plaintiffs do not make a single allegation in their Complaint that they requested and were denied information by Bayer. Nor does fraudulent concealment apply where, as here, Plaintiffs by their own testimony were on notice of their claims. *See McHenry v. Adams*, 448 S.E.2d 390, 393 (Va. 1994) ("[Plaintiff's] testimony [that he had 'discovered "there was something wrong"'] shows, as a matter of law, that his claim for damages is time-barred.").

Plaintiffs' original testimony, considered on this record, along with their conclusory allegations of fraudulent concealment, do not establish a jury question as to when the claims accrued: they accrued no later than April of 2006, when Plaintiffs were on notice that Mrs. Lewandowski had been given Trasylol and that Trasylol was a possible cause for her injuries. The two-year statute of limitations expired in April of 2008. Plaintiffs did not file this suit until July 11, 2008. Plaintiffs' claims for Fraud and Deceptive Trade Practices are time-barred.

16

### D.     Loss of Consortium (Count X)

Bayer argues that Plaintiffs' claim for loss of consortium is not cognizable under Virginia

law. (DE 6081 at 12-14 & n.11; DE 6467 at 10 n.8). Moreover, loss of consortium is a

derivative claim that cannot stand where the underlying claims fail. (DE 6081 at 13). Plaintiffs

do not contest these points, arguing only that Plaintiffs have cognizable claims for loss of

consortium under Pennsylvania law. (DE 6332 at 23). Bayer's motion for summary judgment is

granted on this claim.

### E.     Punitive Damages (Count XIV)

Bayer argues that Plaintiffs' punitive damages claim fails because it is derivative of

Plaintiffs' time-barred claims. (DE 6081 at 12-14; DE 6467 at 10 n.8). Plaintiffs do not contest

this point. Bayer's motion for summary judgment is granted on this claim.

## IV.     Conclusion

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Bayer's Motion for Summary Judgment (DE 6081)

is **GRANTED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this _15_ day of

November, 2010.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record

17